ROBERT C. BLACK, plaintiff in error, vs. WILLIAM A. BLACK, and JIMPSEY B. HUNTER, defendants in error.

A bill had two objects, one, to compel the defendant, to convey to the complainant, an interest in the unsold lots of a town; the other, to compel him, to pay over to the complainant, a share of the profits made by him, from the sales of the sold lots of the town. The lots lay in one county, and the defendant resided in another. The bill was brought in the latter county.
*Held*, That the latter county, was a proper one in which to bring the bill.
As to when a second bill is the same as the first, so that, the judgment or decree in the first, is a bar to the second.

In Equity, in Schley Superior Court. Decision by Judge WORRILL, at August Term, 1858.

Robert C. Black, filed a bill in equity against defendants in error, alleging that in the year 1849, William A. Black, Elbridge G. Cabiness, Virgil A. Powers, Holcomb and Chapman, were associated together as partners, in trade, for the purpose of buying the lands on which the town of Oglethorpe is now situated, and speculating upon them; that said parties had contracted for the Maddox land, the Ichaconner land, the Banon land, and the Suber land; all forming a part of the site of the present town of Oglethorpe; that they paid about four thousand dollars for said lands, one installment of which was due the first day of August, 1849; that the partnership was formed and said lands purchased purely for speculation in selling lots in the town, which it was

expected would spring up at that place.    That the purchase of said lands was not made in the name of the copartnership; but in the name of the individual members of the firm, and that the lands were held in good faith by the individual members for the copartnership; that the partners aforesaid were equally interested in the copartnership.

The bill further alleged, that a short time after the formation of the aforesaid copartnership, and before any sales of lots were made, on the first day of July, 1849, it was agreed between plaintiff and defendants, that they three should form a sub-copartnership in reference to the speculation in said lands, that the interest of the said William A. Black, in the said lands, should be equally shared between the said William A. the said Jimpsey B. Hunter and plaintiff; that plaintiff and said Hunter were to join equally in the advancements and expenses incurred by the said William A., in carrying out the original copartnership, and to share equally with him in the profits of one-sixth part of the speculation. That in pursuance of said contract of partnership, plaintiff paid the said William A. on or about the 19th day of July, 1849, seventy dollars and twenty cents, to be used by him in the payment of the one-sixth part of the first payment for all of said lands.

Plaintiff further set forth, that in pursuance of said contract of sub-copartnership, he moved to the city of Oglethorpe and gave his services to a great extent to said copartnership; that for the purpose of encouraging the improvement of lots and enhancing the value of them, and at the special instance of the said William A. he expended the sum of eight thousand dollars, or other large sum in building upon and improving one of the lots of said copartnership; and that said building was a part of the enterprize, the profits and loss of which were to be equally shared by said subcopartners; that plaintiff paid to said William A. eight hundred dollars, plaintiff's full share of the burdens of said subcopartnership, and all that was or ought to have been re-

quired of him; that said sub-copartnership went on smooth-ly until about the first of January 1855, when it became evident that the profits would not be so large as it was at first supposed they would be; that said William A. then be-came at first reserved with plaintiff, and afterwards refused to give him any insight whatever into the affairs of the com-pany; that said sub-copartnership was carried on in the name of said William A. Black, that plaintiff believes it was profitable, and that it realized the sum of ten thousand dol-lars, but that plaintiff has no means of finding out the truth of the matter, but by searching the conscience of said Wil-liam A., that five hundred dollars is all that was ever paid over by said William A. to plaintiff, and is all that was paid by said William A. of the profits of said sub-copartnership ex-cept what he may have paid said Hunter; that said William A. admits that he has moneys in his hands which in good faith ought to be paid over to plaintiff, but insists that he is protected from the payment of them by certain rules of law, which require such agreements to be reduced to writing, and signed by the parties to the same; plaintiff appended to his said bill a copy of a statement signed by said William A. referring as he alleged to said copartnership, and acknowledg-ing the payment by plaintiff of the one-third of the one-sixth part of the first payment for the lands by the original copartnership; the bill further prayed a full account by the said William A. of and concerning the said sub-copartner-ship, that he be compelled to pay to plaintiff the amount found due to him, and that such further relief be granted as to the Court might seem meet.

Appended to the bill was the following memorandum:
6)900

3)150
      1st payment on Maddox land.
  50  R. C. Black's part paid by him.

Black vs. Black and Hunter.

6)330
———
3)55
———     Full payment for the Ichaconner land.
18      R. C. Black's part, paid by him.
6)120
———
3)20
———   1st. payment on Banon land.
6.66   R. C. Black's part paid by him.
6)100
———
3)16.66
———   1st. payment on Suber land.
5.55   R. C. Black's part paid by him.

19th July, 1849.                    WM. A. BLACK.

To this bill, defendant William A. Black filed his plea in bar, denying that defendant had a right to any further discovery or relief, touching the matters and things, contained in his said bill; because all and singular the matters and things in said complainant's bill, charged· and set forth had been theretofore adjudicated between complainant and said William A. by a Court having jurisdiction of the case and the parties, and by a decree still of force, and unreversed; that complainant filed his bill in equity against this defendant in the Superior Court of Marion county, (then the residence of defendant Wm. A. Black,) returnable to the August Term, 1853, of said Court, and by said bill, complainant charged and set forth the identical matters in substance against said defendant Black as are contained in this bill; and that a demurrer to said bill in Marion, was sustained by the Superior Court of Marion county at the September Term, 1857, and by a decree of the Court, said bill was dismissed for want of equity.

The bill to which defendant's plea referred, was filed by the complainant in this bill, and the allegations were substantially as follows: That in the year 1849, Elbridge G.

Cabiness, William A. Black and Virgil Powers, purchased various parcels of land, (which are set out by numbers and localities) in said bill; that they purchased a tract near the Ichaconnee Creek in Houston county, and afterwards sold a portion of it to the South-Western Railroad for a water station and depot site; that they bought a tract from a man named Mattox; and that the lands west of Flint river in Macon county, were laid off into town lots, and are the site of the city of Oglethorpe; that said land was purchased with a view to speculate on said town lots; that a ferry across Flint river, immediately below the town of Oglethorpe, was also purchased by said Cabiness, Powers and William A. Black.

Plaintiff further alleged in this bill, that for a valuable consideration, he purchased from said William A. Black, the one-third part of said Black's interest in all the aforesaid lands, the ferry and town lots, and the one-third part of the profits in any ₁manner to be derived from said speculation; that said Wm. A. Black, promised to give plaintiff a written transfer to the same, but never did give one; but plaintiff alleged that he paid all the money which he had contracted with the said William A. to give to him for said interest of one-third of said William A. Black's share in said lands, ferry and town lots; plaintiff also referred in his bill to a written memorandum signed by said William A., and acknowl-·edging a payment by plaintiff for said interest; a copy of which was appended to his bill (and is the same as the memorandum which is appended to the bill against the said William A. and Hunter.) The bill further alleged that the speculation had been very profitable; and that the said William A. refused to make said transfer to plaintiff, or to account to him for the sales of said lands and town lots, or the rent of said ferry. The prayer was, that he be compelled to execute a written conveyance to plaintiff, of the interest so alleged to have been sold and paid for; that he account fully to plaintiff for all lands sold, for the town lots, ferry rent, &c., and that he account for the value of, and settle for plaintiff's in-

terest in the balance that are not sold; and further, that such further relief be granted, as the nature and circumstances of the case might require, and as might be agreeable to equity and good conscience.

This plea in bar was demurred to, and the Court overruled the demurrer and sustained the plea; whereupon plaintiff in error excepted.

McCay & Hawkins, for plaintiff in error.

Stubbs & Hill, *contra.*

*By the Court.*—Benning, J delivering the opinion.

Was the judgment or decree sustaining the demurrer to the first bill, a bar to the second bill? It is admitted, that it was, if the Court sustaining the demurrer, had jurisdiction of the first bill, and if the facts and the prayer of the first bill, are the same as those of the second.

First then, did the Court have jurisdiction?

The plaintiff in error, by his counsel, insists, that the first bill was "a case" "respecting titles to land," and that as the bill was not brought in the county in which the land lay, the Court had no jurisdiction of it, although, it was brought in the county in which, the defendant resided.

It is true, that one object of the bill, was, to compel the defendant, to convey to the complainant, an interest in the unsold lots of the town of Oglethorpe; but, it is equally true, that another, and probably a much greater object of it, was, to compel the defendant, to pay over to the complainant, his part of the profits, made by the defendant, from the sales of the sold lots of that town. And, in so far, as this last was the object of the bill, the proper county for the bill, was the county of the defendant's residence; and, in that county, it was brought. There was then, at least as much reason that the bill should be brought in the county in which it was

brought, as there was, that it should be brought in the other county; that in which the land lay. This being so, a Court of equity of either county, would have jurisdiction of the case.

Besides, there is not the same reason why cases in equity " respecting titles to land," should be brought in the county where the land lies, that there is, why such cases at common law should.

A Court of equity enforces its judgments, entirely, by acting on the person; not so a Court of common law; it can deliver possession of such lands only, as lie within the county in which it sits.

For these reasons, then, and another which will appear in the sequel, we think, that the Court *did* have jurisdiction.

Were the facts and the prayer of the first bill, the same as those of the second?

We think, that in substance, they were.

The *contract* on which, the first bill relies, is the very same as that on which, the second relies. It is true, that the second bill says, that the contract made a *sub-partnership* with one Hunter, as a *third* party to it; and, that the first bill does not say either of these things, but then it is also true, that that bill states the contract, and whether the contract amounted to a partnership or not, was a question of law. The contract was one, indeed, which, from its very nature, made the parties to it, sharers in losses as well as profits. And the failure in the first bill, to mention Hunter as a third party to the contract, is not sufficient to show, that it was not the same contract as that set up in the second bill.

The contract set up in the first bill, being thus, substantially the same as the contract set up in the second, we may say, that the *facts* of the two bills, were substantially the same.

Were the *prayers* of the two, the same.

The prayer of the first, was, for a conveyance to the complainant by the defendant, of the interest purchased by the

complainant, in the lands that were to be laid out in town lots; for an account of the town lots sold; and of the ferry rent; and of the lots not sold; and for general relief.

The prayer of the second bill, was, for a full account of the "sub-partnership;" and, for general relief. This prayer though short, is fully as comprehensive as the prayer of the first bill, which merely went into particulars.

We think, then, that the facts and the prayers of the two bills, were in substance the same. Consequently, our conclusion is, that the judgment or decree in the first bill, was a bar to the second bill.

If the counsel for the plaintiff in error, are right, in this position, that the contract as stated in the second bill, makes a sub-partnership, and we are right in our position that this contract and that stated in the first bill, are substantially the same, then, their objection that the Court had no jurisdiction in the first bill, is removed, for land held by a partnership, is, they say, to be treated as personalty, and any suit about personalty, must be brought in the county in which, the defendant resides. This is the other reason why we think, that the Court deciding the first bill, had jurisdiction of the bill.

Judgment affirmed.